UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANNETTE WORWELL, on behalf of G.W.,[1] | CASE NO. 1:10CV1307 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Annette Worwell ("Plaintiff"), acting on behalf of G.W., a minor ("Claimant"), seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") lacked substantial evidence to support his decision that Claimant was not disabled and failed to properly evaluate Claimant's Attention Deficit Hyperactivity Disorder ("ADHD") and other evidence of record. ECF Dkt. #15. For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice:

I.  **PROCEDURAL HISTORY**

On December 20, 2004, Plaintiff, acting on behalf of Claimant, filed an application for child's SSI, alleging disability beginning October 30, 2004 due to bronchitis, skin disorders and otitis media. Tr. at 41-44. The application was denied initially and on reconsideration. *Id*. at 54-66. Plaintiff filed a request for a hearing by an ALJ. *Id*. at 49.

On May 8, 2008, an ALJ conducted an administrative hearing, where Plaintiff and Claimant appeared and were represented by counsel. Tr. at 391. At the hearing, the ALJ received testimony

---

[1] *See* L.R. 8.1(a)(2).

from Claimant and Plaintiff, but thereafter continued the hearing due to some missing records and the need for a medical expert ("ME"). *Id*. at 407-408. On August 12, 2008, the ALJ held another hearing, with Claimant and Plaintiff attending with counsel, and Plaintiff and ME Dr. Rajaraman Iyer,[2] whose primary specialty is pediatrics, testifying. *Id.* at 34, 412. On August 22, 2008, the ALJ issued a Notice of Decision - Unfavorable. Tr. at 11-25. On May 13, 2010, the Appeals Council denied Plaintiff's request for review. *Id*. at 3.

On June 14, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On November 16, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #15. On February 24, 2011, Defendant filed a brief on the merits. ECF Dkt. #20. On March 22, 2011, Plaintiff filed a reply brief. ECF Dkt. #23. On June 6, 2011, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #25.

## II.  **STEPS TO DETERMINE WHETHER CHILD IS ENTITLED TO SSI**

In order to qualify for childhood SSI benefits, Claimant must show that he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI. 20 C.F.R. § 416.924(a). The three-step procedure requires the ALJ to determine whether a child:

> (1) is performing substantial gainful activity;
>
> (2) has a "severe" impairment or combination of impairments; and
>
> (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing");

20 C.F.R. § 416.924(a)-(d).  In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925 (d)(emphasis added).  In order to *medically equal* a Listing, a child's

---

[2] The court reporter referred to Dr. Iyer as Dr. Raj Armand, apparently using his first name as his entire name.  Compare Tr. at 34 to 412, 419.

-2-

impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R. § 416.926(a) (emphasis added). In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)(emphasis added). The Commissioner assesses all relevant factors, including:

> (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings;
>
> (2) how the child functions in school; and
>
> (3) how the child is affected by his medications or other treatment.

20 C.F.R. § 416.926a(a)(1)- (3). Further, in considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). The Commissioner considers how a child's functioning is affected during his activities at home, school and in his community in terms of six domains:

> (i) "acquiring and using information";
>
> (ii) "attending and completing tasks";
>
> (iii) Interacting and relating with others;
>
> (iv) "moving about and manipulating objects";
>
> (v) "caring for yourself"; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

### III.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### IV.     **RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his August 22, 2008 decision, the ALJ found that Claimant was a preschooler at the time of the decision and was not engaged in substantial gainful activity. Tr. at 14. He found that Plaintiff had the severe impairments of asthma, allergies, eczema, and ADHD. *Id.* He further found that none of Claimant's severe impairments, individually or in combination, met or medically equaled any of those in the Listings. *Id.* The ALJ indicated that he gave particular consideration to Listing 103.00, et. seq., the childhood respiratory disorders listing, and Listing 112.00, et seq., childhood mental disorders. *Id.* He also discussed these Listings and the reasons why he found that Claimant's conditions did not meet or medically equal these Listings.

The ALJ proceeded to determine that Claimant's impairments, individually or in combination, did not functionally equal the Listings. Tr. at 14. He reviewed the evidence which supported his conclusion. *Id*. at 14-24. Based upon his findings, the ALJ concluded that Claimant was not disabled and therefore not entitled to childhood SSI. *Id.* at 24.

### V.     **ANALYSIS**

Plaintiff asserts that the ALJ lacked substantial evidence to support his determination that Claimant was not disabled. ECF Dkt. #15 at 22. Of her twenty-one page brief on the merits, Plaintiff devotes only four paragraphs to discussing the alleged errors and omissions committed by the ALJ. ECF Dkt. #s 15; 23. Plaintiff contends that the ALJ did not have substantial evidence to deny Claimant's claim because "the ALJ gave significant weight to all the teachers' questionnaires

-4-

which would support a finding of disabled, and the other evidence of record he didn't consider or only accord nominal weight." ECF Dkt. #15 at 23. She also argues that the ALJ failed in his duty to properly evaluate the record evidence. *Id.* She contends that the ALJ found that Claimant's ADHD was severe, but then "argued against its debilitating nature claiming that the recent diagnosis of that condition failed to meet the one year durational requirement." It appears that in Plaintiff's brief on the merits and her reply brief that she focuses her argument on the functional equivalence finding by the ALJ.

### A. FUNCTIONAL EQUIVALENCE

In her reply brief, Plaintiff outlines the applicable law relating to functional equivalence and states that the ALJ gave significant weight to the responses of Claimant's teachers to questionnaires to find less than marked limitations in all domains except "interacting and relating with others" in which he found marked limitations. ECF Dkt. #23 at 5-6. Since the ALJ granted significant weight to the teachers' responses to the questionnaires, Plaintiff concludes that the ALJ should have found that Claimant's impairments functionally equaled a Listing because "most" of the teachers' questionnaires indicated that Claimant had many marked limitations and some extreme functional limitations in the other five domains. *Id.* at 6.

The Court notes that Plaintiff fails to specifically analyze any of the six functional domains in her brief, choosing instead to generally contend that the ALJ committed many errors in his decision. Plaintiff contends that the ALJ failed to discuss the evidence supporting his determination and the evidence supporting a finding of disability, failed to state his reasons for rejecting or crediting particular items of evidence, and failed to assign the weight, if any, that he gave to the opinions of the ME who testified at the hearing. ECF Dkt. #23 at 7.

Before embarking upon Plaintiff's assertions, the Court notes that while the ALJ cannot only discuss the evidence supporting his decision, he is not required to address every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 Fed. App'x 496, 507-508, 2006 WL 305648, at **9-10 (6th Cir. Feb.9, 2006), unpublished; *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Moreover, this Court is limited in review to determining only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's

determination. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). It is immaterial whether substantial evidence supports a different conclusion from that of the ALJ, or whether the reviewing Court may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n. 4 (6th Cir.1986). The substantial evidence standard is intended to create a " 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986)). It also bears repeating that "'Plaintiff has the ultimate burden of establishing the existence of a disability." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993).

Plaintiff asserts that the ALJ failed to comply with Social Security Ruling 09-1p, which requires the ALJ to consider the "whole child" in evaluating a child social security case involving the determination of functional equivalence. ECF Dkt. #23 at 3. SSR 09-1p sets forth the "whole child" approach and requires the ALJ to consider certain questions in determining whether a child's impairments functionally equal a Listing. SSR 09-1p. The Ruling indicates that the ALJ should consider the following questions:

> 1. How does the child function? "Functioning" refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments. We consider:
>
> • What activities the child is able to perform,
> • What activities the child is not able to perform,
> • Which of the child's activities are limited or restricted,
> • Where the child has difficulty with activities—at home, in childcare, at school, or in the community,
> • Whether the child has difficulty independently initiating, sustaining, or completing activities,
> • The kind of help, and how much help the child needs to do activities, and how often the child needs it, and
> • Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

20 CFR 416.926a(b)(2).

> 2. Which domains are involved in performing the activities? We assign each activity to any and all of the domains involved in performing it. Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.
>
> 3. Could the child's medically determinable impairment(s) account for limitations in

-6-

> the child's activities? If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.
>
> 4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain? We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the determination of the degree of limitation.

20 CFR 416.924a.

SSR 09-1p. Importantly, SSR 09-01p goes on to state:

> However, we do not require our adjudicators to discuss all of the considerations in the sections below in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.

The Court finds that contrary to Plaintiff's assertion, the ALJ did provide adequate detail and review in his decision so as to provide an understanding of how he made his findings. Plaintiff contends that the ALJ gave significant weight to questionnaires completed by Claimant's teachers "which would support a finding of disabled, and the other evidence of record he didn't consider or only accord nominal weight. Therefore, he did not have substantial evidence to deny the claim." ECF Dkt. #15 at 23. Plaintiff further states that "[a] review of the teachers' questionnaires, however, shows that most of the teachers evaluated the child as having many marked limitations and some extreme functional limitations in the five other domains, however, the ALJ simply did not address these limitations as required by SSR 09.01[sic]." ECF Dkt. #23 at 6.

The ALJ did state that he gave significant weight to the teacher questionnaires. Tr. at 18. He stated that "[w]hile I considered the opinions of the medical experts, I relied on and therefore gave significant weight to the questionnaires completed by the claimant's teachers." *Id*. The ALJ reviewed each of the teachers' questionnaires in his decision. He cited to the functional questionnaire for age 3-4 completed by Theresa Williams and Patricia Wagner, Claimant's teachers at King Kennedy Head Start during the 2006-2007 school year. *Id*. at 16, citing Tr. at 279-304. The ALJ noted that the teachers found that Claimant had extreme difficulties in only one area in the domain of "acquiring and using information," which was his ability to repeat his home address. *Id*., citing Tr. at 280. For the other thirteen areas in this domain, the teachers found only some

-7-

difficulties or no difficulties at all, including listening to stories, understanding words about space, size or time, telling stories, describing family routines in detail, and recognizing colors, shapes and number to 10. Tr. at 280. The teachers found that Claimant had no marked difficulties in "attending and completing tasks," "caring for self," and "moving about and manipulating objects." *Id.* at 282-283. They found that the areas in the domain of "health and physical well-being" were not applicable. *Id.* at 284. In the domain of "interacting and relating with others," the Head Start teachers found Claimant to have marked difficulties in four of nine areas and to have extreme difficulty in the ability to use words instead of actions to express himself. *Id.* at 281.

The ALJ also reviewed the questionnaire completed by Tracy Salette, Claimant's teacher during the 2007-2008 school year. Tr. at 16, citing Tr. at 328-337. The ALJ noted Ms. Salette's findings that Claimant had marked difficulties in nine of fourteen areas in the "acquiring and using information" domain, marked difficulties in four of the twelve areas of the "attending and completing tasks" domain, marked difficulties in three of the nine areas of the "interacting and relating with others" domain, and only some or no difficulties in the "caring for self," "moving about and manipulating objects," and "health and physical well-being" domains. *Id.*

### 1. **ACQUIRING AND USING INFORMATION**

While he gave significant weight to the teachers' questionnaires, this does not necessitate a finding of disability, as concluded by Plaintiff. In the domain of "acquiring and using information,"

Claimant's teachers at Head Start noted extreme difficulties in only one area of this domain, that of repeating his home address. Tr. at 280. They found only some difficulties or no difficulties in all other thirteen areas in this domain. *Id*. And while Ms. Salette checked many more areas of marked difficulty in this domain, the ALJ noted that she explained these marked difficulties by merely stating that Claimant is "often distracted and unfocused." *Id*. at 16, citing Tr. at 330. The ALJ also referenced the findings of Mr. LaMont Johnson, Claimant's speech therapist, who evaluated Claimant while he was in the "Help Me Grow" program and provided four sessions of speech therapy in 2006 for concerns regarding possible mild delays in Claimant's cognitive, fine motor and delayed language skills. *Id.* at 16, citing Tr. at 215-220. In his October 2007 questionnaire, Mr.

-8-

Johnson noted his last contact with Claimant as the Fall of 2006 and he found that Claimant had only one marked difficulty in the area of grouping related objects under the domain of "acquiring and using information." *Id.* at 215-220. The ALJ noted Mr. Johnson's explanation that Claimant was not as familiar with some of the concepts because he was at home and not before placed in a classroom setting. *Id.* at 16. The ALJ also noted Plaintiff's questionnaire answers in which she indicated that Claimant had no or only some difficulties in "acquiring and using information." *Id.*, citing Tr. at 182. In describing her limitations for Claimant in this domain, Plaintiff explained that Claimant had a hard time expressing himself. *Id.* at 182.

Thus, while Ms. Salette had indicated some marked difficulties in the domain of "acquiring and using information," the ALJ nevertheless had substantial evidence to support his less than marked limitation in this domain based upon the answers given by Ms. Williams and Ms. Wagner of Head Start, Mr. Johnson, and Plaintiff. Moreover, the ALJ also noted that Plaintiff did not seek treatment for Claimant's behavioral issues until April 29, 2008, which belied Plaintiff's allegations of Claimant's disability. Tr. at 18. Further, contrary to Plaintiff's contention that the ALJ had no basis upon which to find that some of Claimant's behavioral issues could stem from his language difficulties, the ALJ did have support for this finding as Mr. Johnson and Plaintiff had confirmed some communicative difficulties.

### 2. **ATTENDING AND COMPLETING TASKS**

The same analysis applies to the domain of "attending and completing tasks." The ALJ reasonably found that Claimant had less than marked limitations in this domain based upon the questionnaires by Claimant's teachers. Tr. at 20. Again, Ms. Wagner and Ms. Williams of Head Start found that Claimant had no or only some difficulties in every area of this domain. Tr. at 282. Ms. Salette found Claimant to have marked difficulties in four of the twelve areas in this domain and some difficulties in the remaining areas. *Id.* at 333. She explained that Claimant would get frustrated and say "I can't do it" when given a task. *Id.* She noted that once he was distracted, he would have to be reminded of the task. *Id.* Plaintiff indicated that Claimant had no or only some difficulties in this domain. *Id.* at 184. Mr. Johnson also concluded that Claimant had no difficulties in this domain, indicating that Plaintiff had reported no such issues. *Id.* at 216.

-9-

#### a. **MEDICAL EXPERT OPINION**

In addition to the teachers' questionnaires, the ALJ also referenced the ME's opinion in his decision on this domain, finding that the questionnaires and ME's opinion were consistent with the record as a whole. Tr. at 20. As to "attending and completing tasks," the ME had found that Claimant had less than marked limitations, despite Ms. Salette's findings. *Id*. at 437. The ME reasoned that when determining whether limitations are marked, it is difficult to find that marked limitations exist when the child does not show the same kind of limitations in the domain both at school and at home. *Id.* He therefore concluded that Claimant had less than marked limitations in this domain.

The ME also concluded that Claimant had less than marked limitations in the domain of "acquiring and using information." Tr. at 431. When counsel asked the ME about Ms. Salette's finding of marked difficulties in numerous areas of this domain, the ME responded that it was difficult to determine if domains were marked based upon a few checkmarked boxes on a questionnaire as Ms. Salette provided little to no support for her findings. *Id.* He also stated that some of the areas that Ms. Salette found marked are areas in which some four year-olds do not know or cannot do very well at their age, such as repeating an address, tying shoe laces, describing family routines, and recognizing colors, shapes and numbers. *Id.* at 430.

Plaintiff correctly notes that the ALJ did not articulate the weight that he attributed to this ME's opinion. He reviewed the substance of the opinion and referred to it when discussing two of the domains. Tr. at 20-22. It is true that opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii).

The opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D.Ohio

Aug.5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling ("SSR") 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. § 416.927(d), (f).

While the ALJ did not explicitly set forth the weight that he gave to the ME's opinion or explain how he reviewed the proper factors, a review of the ALJ's entire decision shows that he considered the factors during his review of the evidence. *See Burroughs v. Astrue*, No. 1:10CV1239, 2011 WL 2604771, at *5 (N.D. Ohio July 1, 2011)(finding that record as a whole demonstrated that the ALJ considered the proper factors for weighing nontreating source opinions although the ALJ did not explicitly articulate in his decision the weight he gave to those opinions or his review of the appropriate factors).

In this case, a review of the ALJ's decision confirms that he considered the proper factors for reviewing the weight to give to the opinions of the ME and the influence that the ME's opinion had on the ALJ's decision. The ALJ thoroughly reviewed the testimony of the ME in his decision. Tr. at 18. He indicated that while he had considered the MEs' opinions, he gave significant weight to the responses of Claimant's teachers on the functional questionnaires. *Id*. Thus, it is apparent that he attributed less than significant weight to the opinions of the ME. Moreover, when the ALJ does refer to the ME's opinions in two of the domains, that is "attending and completing tasks," and "interacting and relating with others," he mentions secondarily that his finding is consistent with the ME's opinion, which was consistent with the record as a whole. *Id*. at 20. He first mentions that his findings are consistent with the responses of Claimant's teachers on the functional questionnaire. Thus, while the ALJ fails to expressly articulate the weight and his review of the proper factors, it is nevertheless clear that his findings were consistent with the ME's findings and he accorded some weight to the opinion of the ME who testified at the hearing. *See Stenson v. Comm'r of Soc. Sec.*, No. 3:10CV397, 2011 WL 1136220, at *6 (N.D. Ohio Mar. 29, 2011).

Moreover, even if the ALJ erred by not articulating his review of the proper factors and the weight that he gave to the ME's opinions, the Court finds this error to be harmless. "An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.'" *Wilson*, 378 F.3d at 546–47 (emphasis added) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir.1983) ). Plaintiff fails to show how Claimant suffered prejudice from such an error, especially when the ALJ's based his findings mainly on the responses by Claimant's teachers on the functional questionnaires.

### 3.  **INTERACTING AND RELATING WITH OTHERS**

As to interacting and relating with others, the ALJ found that Claimant had marked limitations in this domain. Tr. at 21. The ALJ relied upon the ME who noted Claimant's history of difficulties in peer relationships as reported by Claimant's teachers. *Id.* However, the ALJ also noted the inconsistencies as to the extent of Claimant's limitations in this domain, noting that while Claimant's therapist reported that Claimant had difficulties showing affection toward others, teachers reported that Claimant was affectionate toward his mother. *Id*. The ALJ also noted that despite Plaintiff's reported concerns regarding Claimant's ability to interact with others, she did not seek treatment for him until June 2008. *Id*. He also cited to the record showing that Plaintiff did not seek assistance from Claimant's pediatricians prior to June 2008 for the symptoms and Claimant was on no medication for such symptoms. *Id.* Substantial evidence supports the ALJ's finding in this domain.

### 4.  **MOVING ABOUT AND MANIPULATING OBJECTS**

In "moving about and manipulating objects", substantial evidence supports the ALJ's finding that Claimant has no limitation in this domain. Tr. at 22. The ALJ correctly found that no opinion evidence of record supported a finding of any limitations in this domain. Teachers Ms. Wagner and Ms. Williams found no limitation in this domain and Ms. Salette found no difficulties in eleven of the thirteen areas of this domain and found only some difficulties in the other two areas. *Id.* at 284, 335.

### 5. **CARING FOR SELF**

In the domain of "caring for self," substantial evidence also supports the ALJ's finding of no limitations. Tr. at 23. None of Claimant's teachers found any limitation in any of the areas in this domain. *Id.* at 283, 334.

### 6. **HEALTH AND PHYSICAL WELL-BEING**

Finally, in the domain of "health and physical well-being," substantial evidence supports the ALJ's determination that Claimant had less than marked limitations in this domain. Tr. at 24. The ALJ found that while the evidence of record showed that Claimant has asthma and allergies, his symptoms were well-controlled with medication. *Id*. Dr. Milgram, a pediatric pulmonologist, indicated that Claimant had done very well with regard to his asthma as he did not require the use of albuterol, an emergency room visit, or hospitalization since his last visit. *Id.* at 163. However, the ALJ found that Claimant had some limitations in this domain because his allergies limited him with regard to outdoor activities, as established in the evidence. *Id*.

The ALJ also considered Claimant's recent diagnosis of ADHD in June 2008. Tr. at 17-18, 24. Plaintiff complains that the ALJ failed to fully and accurately evaluate the evidence of record because he found Claimant's ADHD to be severe but then argued against its disabling nature by finding that the recent diagnosis of the impairment failed to meet the one-year durational requirement. ECF Dkt. #15 at 23. Plaintiff acknowledges that a severe impairment must meet the twelve-month durational requirement, but asserts that the regulation concerning this requirement is broader than that used by the ALJ. *Id*. Plaintiff asserts that the ALJ failed to determine whether Claimant's ADHD began before its actual diagnosis or whether it could be expected to last for twelve continuous months. *Id.*

Plaintiff is correct that in order for a child to be found disabled, he must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). However, the burden is on Plaintiff to show that he meets the durational requirement. *Bingaman v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 642, 644 (6th Cir. 2006), unpublished, citing 20 C.F.R.

-13-

§ 404.1520(d); *see also* 20 C.F.R. § 416.912 (claimant must provide evidence to show that he has an impairment and its severity during the time he says he is disabled).

Plaintiff in this case failed to establish that Claimant's ADHD was of disabling severity for a twelve-month period prior to its diagnosis or that it can be expected to be as severe for a continuous period of not less than twelve months. The ALJ noted Claimant's recent ADHD diagnosis and found that it did not meet the one-year durational requirement for a disabling condition. Tr. at 18. He noted that Plaintiff did not seek treatment for Claimant's behavioral issues until June 2008 which belied her allegations of disabling severity. *Id*. The mere diagnosis of an impairment does not indicate the severity of the impairment on a claimant's functioning and does not establish severity for a continuous period of time. *Despins v. Comm'r of Soc. Sec*., 257 Fed. Appx. 923, 930 (6th Cir. 2007); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).

Even if, as Plaintiff argues, the ADHD impairment existed prior to its actual diagnosis, substantial evidence supports the ALJ's determination that Claimant's ADHD did not result in the marked and severe functional limitations for a continuous period of twelve months in order to establish his disability. The ALJ reviewed the medical evidence, the agency physicians' opinions, and the questionnaires completed by Claimant's teachers. Upon giving significant weight to the questionnaires completed by Claimant's teachers, the ALJ had substantial evidence with which to find that Claimant's ADHD did not meet the durational period since the teachers' responses for the most part showed that Claimant had less than marked limitations in each of the domains, except for the "interacting and communicating with others" domain. For instance, Ms. Salette indicated in the 2007-2008 school year that Claimant was markedly limited in nine areas in the "acquiring and using information"domain, suffered extreme difficulties in one area and marked difficulties in three areas in the "interacting and relating with others," and had marked difficulties in four areas of the "attending and completing tasks"domain. Tr. at 330-333. However, Claimant's teachers in the 2006-2007 school year completed the same questionnaire and found that Claimant had only one extreme difficulty in "acquiring and using information" as he had difficulty repeating his home address. *Id*. at 280. They found only some and no marked difficulties in the other areas of this domain. *Id*. These teachers also found no extreme or marked difficulties in the area of "attending

-14-

and completing tasks. *Id*. at 282. In the domain of "interacting and relating with others," they found extreme difficulties in one area and marked difficulties in four areas. *Id*. at 283. Mr. Johnson had completed the same questionnaire on October 4, 2007, indicating that he last saw Claimant in the Fall of 2006 and he had marked difficulties in only one area of "acquiring and using information," and no extreme or marked difficulties in the domains of "attending and completing tasks," or "interacting and relating with others." *Id.* at 217. With the overlap in the school years and the differing opinions as to the severity of Claimant's abilities in the domains, the ALJ reasonably determined that Claimant's ADHD did not meet the durational requirement because Claimant failed to show that he had marked and severe functional limitations for a continuous twelve-month period due to ADHD or that marked and severe functional limitations from ADHD were expected to last for a period of twelve months. Moreover, as found by the ALJ, the limitations as found by the teachers were not so severe as to result in a finding of disability for a period of twelve months.

Since the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."). *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).

## VI.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.

DATE: February 29, 2012                           */s/George J. Limbert*
                                                                   GEORGE J. LIMBERT
                                                                   UNITED STATES MAGISTRATE JUDGE